failed to vest the fee of the street beyond the four-hundred foot line in the city, as claimed by defendants, it certainly did not vest the same in the defendants. But, whether the people of the state surrendered their rights in the soil of Tenth street to be made to the city by the act of April 13, 1826, or no, the patent of 1871 vested in the plaintiffs a valid title to so much of the *locus in quo* as lay east of the four-hundred foot line. The fact that at the date of the patent a portion of the premises beyond the four-hundred foot line was occupied by the ferry-rack and pier—structures over which the water did not and could not flow—does not aid the defendants. The pier and ferry-rack were artificial structures, and, though in a technical sense they may be termed real estate, they are in no sense land. This distinction was drawn by the court of appeals in the case of *Smith* v. *Mayor, etc.,* 68 N. Y. 556. 'A pier is a large, bulky structure. It may cost many thousand dollars. If it is not real estate, what is it? It is not personal estate. If it is not real estate, it is because it is placed upon land belonging to another.' Prior to the issuance of this patent, the wharves and docks along the river front were of three characters,—those belonging to the city, located on land belonging to the city; those belonging to private parties, located on land belonging to the city; and those belonging to private parties, located on land belonging to the state. It was the intent of this patent to vest in the present plaintiffs, to facilitate the duties imposed upon them by the provision of chapter 574, Laws 1871, the title to the real estate upon which piers of the latter class were located, and according to this intent the patent must be construed. The plaintiffs should have judgment for the possession of the property described, and for costs."

Judgment was rendered for plaintiffs, and defendants appeal.

Argued before VAN BRUNT, P. J., and BRADY and BARTLETT, JJ.

*Robinson, Scribner & Bright, (John F. Dillon* and *E. Randolph Robinson,* of counsel,) for appellants. *Henry R. Beekman,* Corporation Counsel, and *Frank A. Irish,* for respondents.

PER CURIAM. The judgment appealed from is affirmed, with costs, upon the opinion of the learned referee.

---

## *In re* STEVENS' ESTATE.

*(Supreme Court, General Term, First Department. July 9, 1889.)*

1. PROBATE PRACTICE—STAY OF PROCEEDINGS.
   The executors of a will filed their accounts at different times before the surrogate, upon which controversies arose relative to charging certain items to the account of the trustees of a fund created by the will. Some of these questions were decided by the surrogate in favor of the trustees, and one was not passed upon by him. Another question was decided in favor of the beneficiary of the fund. No formal decree carrying out these decisions was entered, and the matter rested for several years, during which the trustees sued in the supreme court to determine these and other questions, and a referee's report was filed, which was a determination contrary to that reached by the surrogate, in several particulars, but which was not so far final that it could not be changed by evidence to be thereafter taken. The report was apparently acquiesced in by all parties for about six years, when the beneficiary in the trust fund moved the surrogate to enter a formal decree carrying out his decisions. The executors moved a stay of proceedings during the pendency of the action in the supreme court, which was denied, and a decree entered as asked by the beneficiary. *Held,* that the decree was erroneous, and that the stay should have been granted.

2. APPEAL—BY WHOM.
   Though the motion for the stay was made by the executors alone, the trustees, having been heard in support of it, can join in the appeal.

Appeal from surrogate's court, New York county.

Proceedings before the surrogate upon the accounting of the executors of the will of Paran Stevens, deceased, were pending, whereupon said executors moved a stay thereof until the determination of an action involving the same

questions in the supreme court. The stay was denied and a decree on the merits rendered. The executors and testamentary trustees also moved for the insertion of certain reservations in the decree, and this was also denied. They appeal as well from the orders denying the stay and refusing to make the desired reservations, as from the decree itself. See *post*, 638.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*John E. Burrill* and *George Zabriskie*, for appellants. *Hoadly, Lauterbach & Johnson*, for respondent Mrs. Stevens.

DANIELS, J. The testator, by his will, appointed his wife, Marietta R. Stevens, executrix, and Charles G. Stevens and John L. Melcher executors, of his estate. Letters testamentary were issued to them by the surrogate of the county of New York, and they entered upon the discharge of their duties as such executrix and executors. After his decease they rendered statements of their accounts to the surrogate to May, 1874, which were settled by him; and additional accounts were subsequently presented for the like object. One extended to the 1st of May, 1878, another to the 1st of July, 1879, and a still further account was presented from that time to January 1, 1880. Accounts were separately presented by the two executors and the executrix; the accounts of the latter including the moneys received, disbursed, and used by her. · Objections were made to the account in several respects, and it was referred to an auditor or referee to take proof and report upon the objections. This proof was received by him, and was finally concluded on the 13th of May, 1881. He made his report in the month of October of the same year, which was modified in material respects by the surrogate, who finally made his decision on the 31st day of December, 1881, which was the last day of his term of office. Paran Stevens, the testator, by his will appointed Charles G. Stevens and George F. Richardson trustees of a trust created for the benefit of his widow during her life, amounting to the sum of $1,000,000. He also bequeathed her a legacy of $100,000. A dispute arose in the accounting before the surrogate as to their right to charge the widow as beneficiary in this trust with moneys which had been expended by the executors with the sanction and authority of the trustees themselves. An agreement had been entered into by which it was agreed that as a part of this trust, amounting to the sum of $1,000,000, there should be conveyed by the executors to the trustees certain property bounded by Broadway, Twenty-Seventh street, and Fifth avenue, known as the "Stevens Apartment House," and a deed of this and other property was executed by the executrix and the executors, conveying it to the trustees for the purpose of providing a part of the estate required for the creation of the trust. This property was valued at the sum of $850,000, but it was subject to a mortgage to the Union Dime Savings Institution, amounting to the sum of $425,000. This mortgage had been placed upon the property by the testator, and the effect of the conveyance was to appropriate the property to the purposes of the trust at its valuation over and above the amount of the mortgage, being the sum of $425,000, and it was conveyed and received by the trustees with the assent of the widow, the beneficiary, for this proportionate amount of the capital of the trust. After that was done, and in the year 1878, the trustees of the savings bank called in this mortgage to the extent of $125,000, and at the request of the trustee, who at the time was in the country, and acting in the business, the executors advanced this sum of money by three different payments made upon the mortgage, reducing it thereby to the sum of $300,000. In the accounting before the surrogate these advances were allowed to the executors, but they were not charged to the trustees, or made a part of the capital of this trust, and the surrogate sanctioned this disposition of these payments.

There was paid, also, by one of the executors to Ellen S. Melcher in July, 1887, the sum of $20,000, to apply upon the rents and profits of her third

of the residue of the estate, after the payment of the legacy to the widow and the creation of the million-dollar trust. This payment was disallowed by the referee, for the reason that the money was paid directly to herself instead of her trustees, and that disallowance was approved by the surrogate, for the reason that in his judgment the money was derived from business in which a part of the capital of the estate was invested, and which, he held, should be first appropriated to the completion of the trust in favor of the widow. A judgment in an action in this court, however, had previously been recovered, to which the widow herself was a party, appropriating the moneys resulting from the business to the use of the beneficiaries in the residuary estate, and directing that the million-dóllar trust, so far as property should be required for that object, should be created by the conveyance or sale of the testator's real estate. This payment it was also proven was sanctioned by the trustees themselves, as well as by the counsel for the widow, when a distribution of the sum of $40,000, derived from the same business, was made for the benefit of the other two children of the testator. After the mortgage upon the apartment house had been reduced to the sum of $300,000, it was transferred to the New York Life Insurance Company, through the exertions of a broker, whose commissions amounted to the sum of $6,000. As the mortgage was held by the savings institution, interest amounting to the sum of 7 per cent. was reserved upon the loan, but the insurance company took it at the reduced interest of 6 per cent., thereby relieving the widow from the appropriation out of the rents collected for the use of the property of this sum of 1 per cent. The commissions of the broker, through whose agency this change was effected, were charged by the executors to the trustees, but that charge was rejected in the decision made by the surrogate. The widow was also shown to have made expenditures in proceedings in the probate court in the city of Boston, taken by her against the two executors, complaining of mismanagement and misconduct on their part. These proceedings were not terminated in the probate court, and the expenditures made by her for legal services and otherwise in them were brought forward as charges in her favor to be allowed to her as executrix in the statement of her accounts; and they were so allowed by the surrogate, notwithstanding the fact that the proof seems to have been radically defective upon which the claim for their allowance was made. After the apartment house was conveyed to the trustees its foundation settled on the Fifth-Avenue side, and extensive repairs became necessary for the purpose of supporting and maintaining that side of the building. These expenses, at the request of the trustees, were paid by the executors, amounting to $33,707.31, but it was not determined by the surrogate whether they should be charged against the trustees or borne by the executors of the estate. While these proceedings were going forward the trustees, for the purpose of obtaining a definitive settlement of the matters in dispute between themselves and the executors, and the widow as beneficiary in the million-dollar trust, brought an action in this court to secure the determination of this and other subjects of controversy. This action was commenced in June, 1879, and the widow, who was more especially interested in contesting the claims made for the allowance of these items other than her expenditures in the proceedings in the probate court, answered the complaint, and contested the right of the executors to the allowance of these several sums of money paid to the savings institution, and for commissions and repairs against the capital of her trust-estate. Evidence was taken upon the issues before the referee, and he made a report in 1884 in the nature of an interlocutory decision, but which was not to be considered so far final or conclusive as to prevent his conclusions from being changed by the evidence which might be given in the accounting directed to be taken. Both parties appear to have acquiesced in the propriety of this action until an application was made on behalf of the widow for the entering of a formal decree embodying and car-

rying into effect the decision of the surrogate upon these several items, and other matters in controversy in this court. To prevent the entry of the decree a motion was made on behalf of the executors for a stay until after the entry of judgment in the action brought by the trustees against the executors and others. This motion was denied by the surrogate, who, on the 5th of December, 1885, entered a decree carrying into effect the conclusions of his predecessor.

It is evident from the decision of the referee that his conclusions are in conflict with those of the surrogate as to the disposition of the $125,000 paid upon the mortgage, and the commissions paid to the broker; and he also appears to be of the opinion that the expenditures incurred in repairing the wall of the apartment house should be charged against the trustees as a part of the capital of the million-dollar trust. These decisions appear to have been made and announced before the application of the executrix and beneficiary in the million-dollar trust was made to the surrogate to enter the decree in his court, and after about six years of continued acquiescence in the litigation of the same matters before the referee in the action brought by the trustees. The object of entering the decree probably was to use it as a bar, or as evidence which should be attended with that result, in the action before the referee; for it was offered in evidence before him, but he declined to receive it. In this state of the facts attending the litigation, and because of the omission on the part of the beneficiary in this trust to set up the proceedings before the surrogate by way of defense to the action brought by the trustees, the decree upon the decisions of the surrogate's predecessor in office, so far as it included these items, should not have been entered. Its entry to that extent was calculated to do no more than embarrass the litigation regularly proceeding before the referee, and which had matured into decisions, although not entirely final, upon these controverted subjects. If the application for the entry of the decree had been speedily made after the decision of the surrogate had been reached, a very different case would have been presented from that now appearing by the appeal; for the parties then would have been in a situation at once to have brought the decree up by appeal, and obtained in that manner a speedy decision of these controverted subjects. But by delaying it until they had been otherwise litigated in a regular proceeding, with the acquiescence of the executrix and beneficiary in the trust herself, she deprived herself of the strict right to the entry at the time when it was made of this decree, so far as it included the items before the referee.

The motion in form for the stay was made by the executors, but upon its hearing the trustees appeared and were heard by counsel in support of the application. It was opposed only by the widow, the beneficiary in the trust, and, being supported in this manner by the trustees, there seems to be no ground for substantial objection to the trustees', as well as the executors', appealing from the order; and they have both by their petition and notice taken that appeal. But even if they should not be permitted to take this appeal, the remedy for its correction was by a motion for its dismissal, and if it had been dismissed, still in this manner vacating the order on the appeal of the executors would effectually meet all the exigencies of this part of the litigation. The order should be reversed, and the decree so far modified as to exclude the items from it upon which the referee has made and declared his decision, and this modification should be without costs to either party. All concur.